UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GCI CONSOLIDATED, LLC d/b/a GOLF CLUB OF ILLINOIS LINKS LIMITED PARTNERSHIP ROLLING KNOLLS, LLC<br><br>　　Plaintiff,<br><br>v.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO. 1:23-cv-3807<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Comes now the Plaintiff, GCI Consolidated d/b/a Golf Club of Illinois Links Limited Partnership Rolling Knolls, LLC ("GCI"), by counsel, and for its Response to Defendant's Partial Motion to Dismiss Plaintiff's Complaint, states as follows.

LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *Labella Winnetka, Inc. v. General Cas. Ins. Co.*, 259 F.R.D. 143, 146 (N.D. Ill. 2009). See also *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the… claim is and the grounds upon which it rests." *Labella Winnetka, Inc. supra* quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health*

1

*Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1965, 1973 n. 14). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *See Twombly supra at 563.* The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir.2005).

      I.    SECTION 155 OF THE ILLINOIS INSURANCE CODE

In its Complaint, GCI alleged that the Defendant committed the following improper claims practices:

(1) Defendant failed to interview witnesses who had relevant information about when the Loss occurred, how the Loss occurred, and what caused the Loss;

(2) Defendant failed to correctly and fairly inspect the property to determine the nature and scope of the damaged property,

(3) Defendant intentionally misrepresented the contents of the ITEL report and refused to discuss the contents of same with Plaintiff's representative,

(4) Defendant failed to compensate Plaintiff for the cost of necessary mitigation work.

While Defendant asserts Plaintiff has failed to allege any unreasonable conduct which could entitle it to relief under Section 155, Plaintiff would note that a simple review of the Complaint would prove otherwise. As noted above, Plaintiff has made no less than four (4) allegations of unreasonable conduct which, if true, would entitle it to the relief requested.

More specifically, Plaintiff alleges that Plaintiff failed to identify specific individuals whom Defendant failed to interview about the claim. However, this misrepresents Plaintiff's actual allegation, as Plaintiff is not alleging that Defendant should've interview individual A, B, or C. Instead, Plaintiff is alleging that Defendant failed to interview anyone at all with relevant knowledge of the claim, and that their failure to do so was objectively unreasonable.

Second, Plaintiff alleges that Defendant failed to correctly and fairly inspect the property to

2

determine the nature and scope of the damage. This allegation alone, if true, would objectively constitute unreasonable conduct on the part of the Defendant. As the discovery process will reveal, Defendant and/or its representatives and/or its retained experts failed to inspect a significant portion of the damaged property, only to subsequently produce an arbitrary and capricious report claiming there was no damage to the property they failed to inspect. This report was then used as a basis to deny coverage for the property in question. This conclusion-oriented investigation (or lack thereof), if true, would objectively qualify as unreasonable conduct.

Third, Plaintiff alleged in its Complaint that Defendant misrepresented and/or ignored the contents of the ITEL report which, if true, would qualify as unreasonable conduct. While Defendant asserts and denies in its Memorandum in Support of its Motion to Dismiss that the contents of the ITEL report were misrepresented or ignored, Plaintiff asserts that a review of the ITEL report would demonstrate otherwise. Specifically, the ITEL report states that (1) the manufacturer of the tile could not be determined, (2) the product is not suitable for individual tile repair, (3) available tiles which could be utilized for repair/replacement would be "similar" and would not match the color, and (4) the available replacement tile would only be recommended "as a possible total Slope/Elevation repair type product". In fact, the adjuster for Nationwide acknowledged, in writing, to Plaintiff's public adjuster, John Farenzena, that "the ITEL report states that a current match of the shingles is not available". As such, while counsel for Defendant asserts that the ITEL report does in fact state that a match of the tile is readily available and accessible, Defendant's own adjuster acknowledged the opposite. Additionally, Defendant failed to note in its Memorandum that the ITEL report also states that the replacement tile would "only be recommended as a possible total Slope/Elevation repair type product". Why is this important? It's important because the evidence will show that there are damaged tiles on all slopes and elevations, and thus being that the replacement title is "not a suitable individual tile repair type product" but is instead "only recommended as a possible total Slope/Elevation repair type product", the only recommended

3

means of repair would be to replace the entire roof.

Lastly, Plaintiff has alleged that Defendant failed to compensate Plaintiff for mitigation work which was carried out in order to prevent further damage to the property, as its Policy requires. This allegation alone, if true, would objectively qualify as unreasonable conduct on the part of the Defendant.

Therefore, because the Plaintiff's allegations objectively support a claim for bad faith conduct under Section 155, Defendant's Motion to Dismiss Count II of the Complaint must be denied.

    II.    COMMON LAW FRAUD

In order to prevail on a claim for common law fraud in Illinois, a Plaintiff ultimately must prove: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (1996).

When a plaintiff makes averments of fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to plead "the circumstances constituting fraud…with particularity." *In re HealthCare Compare Corp. Secs. Litig.,* 75 F.3d 276, 281 (7th Cir.1996). The " circumstances" of fraud " include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.,* 536 F.3d 663, 668 (7th Cir.2008). Where a party wishes to attack the theory of a case, as opposed to its want of detail, the rule to invoke is Federal Rule of Civil Procedure 12(b)(6). However, for Rule 9(b) purposes, a person pleading fraud need not reveal the theory of his or her case. *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 523-24 (7th Cir.1993).

Despite Defendant's assertion to the contrary, Plaintiff asserts that, within Count III of its

4

Complaint, it properly plead the five (5) elements of common law fraud in Illinois, and that it did so by alleging specific facts from which a jury could reasonably infer such fraud. The conduct described by Plaintiff in Count III of its Complaint is not "merely a breach of contract or conduct proscribed by section 155", but instead were intentional and affirmative misrepresentations of material present or pre-existing facts constituting fraud, and/or statements relating to an intention to perform, or not perform, future conduct as part of an overall scheme to defraud the Plaintiff. See *Soules*, *supra* at 286; *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168-69 (1989).

In a contractual setting, a plaintiff pleading fraud must show more than "the mere fact that a defendant promised something and then failed to do it." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill.App.3d 308, 312 (2nd Dist. 2000)); *Greenberger*, 631 F.3d at 399. In other words, "a breach of contractual promise, without more, is not actionable" either under the Consumer Fraud Act, *Avery*, 216 Ill.2d at 169, or under a theory of common law fraud. *See Greenberger*, 631 F.3d at 401. The plaintiff must prove that the defendant engaged in fraudulent acts or practices distinct from any underlying breach of contract. *Id.* at 399 (citing *Avery*, 296 Ill.2d 100). Despite Defendant's assertion to the contrary, Plaintiff has done just that in Count III of its Complaint. More specifically, Plaintiff alleged that the insurance adjuster, John Matthews, knowingly and willfully misrepresented the contents of the ITEL report on or about August 1, 2022 when he claimed that the ITEL report concluded that shingles which match the shingles on the damaged roof were available and could be readily sourced.

As outlined above in section II, the ITEL report does not state that matching shingles are available and could be readily sourced, as John Matthews himself acknowledged in his August 1, 2022, e-mail to John Farenzena. Instead, what the ITEL report does state is that there are "similar" shingles available which would *not* be appropriate for individual tile repair but would instead only be recommended "as a possible total Slope/Elevation repair". Why wouldn't these new shingles be

5

appropriate for individual tile repair? The Plaintiff asserts that the only explanation is because they would not match the surrounding shingles, thereby creating a noticeable "mishmash" of different colored, non-matching shingles. This is why the ITEL report clearly states that, if repairs are to be undertaken with this "similar" tile, then the entire slope/elevation would need to be replaced. Being that there are damaged tiles on all slopes/elevations, the ITEL report would lead any objective reader to conclude that the entire roof needs to be replaced. Despite this fact, Defendant has not agreed to cover a total roof replacement, but instead has agreed to replace individual tiles, despite the ITEL report clearly stating that the products they intended to use are "not a suitable individual tile repair type product".

As required by applicable law, Plaintiff has properly alleged the "circumstances of fraud" which the court in *Windy City Metal Fabricators & Supply, Inc.* require the Plaintiff to plead, including the identity of the person(s) who made the misrepresentation, the date on which the misrepresentation(s) was made, the content of the misrepresentation(s), and the method by which the misrepresentation(s) was communicated. These are not simply allegations that Defendant failed to do something it promised to do, therefore constituting a breach of contract. Instead, these are specific misrepresentations of material facts which demonstrate a fraud or fraudulent scheme meant to dissuade the Plaintiff and/or its representatives from proceeding forward with the claim.

Therefore, pursuant to the foregoing applicable law, Plaintiff has clearly and properly alleged a claim for common law fraud and said claim should not be dismissed.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion to Dismiss Counts II and III of the Complaint.

.

Respectfully submitted,

By: */s/ H. Clay List*

H. Clay List
clist@hodgefirm.com
The Hodge Law Firm, PLLC
1301 Market Street
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above document was filed electronically with the above captioned court, with notice of case activity to be generated and sent electronically to all attorneys of record by the Clerk of said court, this 13th day of September 2023.

/s/ H. Clay List
H. Clay List

7

Case: 1:23-cv-03807 Document #: 18 Filed: 09/13/23 Page 8 of 8 PageID #:163